# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CULTIVATE KC<br>4049 Pennsylvania Avenue, Suite 206<br>Kansas City, MO 64111;<br><br>FAITH IN PLACE<br>5416 S Cornell Avenue, 4th Floor<br>Chicago, IL 60615;<br><br>FOODSHED ALLIANCE<br>326 High Street,<br>Hope, NJ 07844;<br><br>GREENLATINOS<br>1919 14th Street, Suite 700<br>Boulder, CO 80302;<br><br>HOPE FOR SMALL FARM SUSTAINABILITY<br>19833 Morris Road,<br>Harlingen, TX 78552;<br><br>HENDRIX FARM;<br><br>RED FIRE FARM; *and*<br><br>TWO BOOTS FARM,<br>　　　　　　*Plaintiffs*,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE<br>1400 Independence Avenue SW<br>Washington, DC 20250;<br><br>BROOKE ROLLINS, in her official capacity as Secretary of the Department of Agriculture<br>1400 Independence Avenue SW<br>Washington, DC 20250; *and*<br><br>DONALD J. TRUMP, in his official capacity as President of the United States of America<br>1600 Pennsylvania Avenue NW<br>Washington, DC 20500,<br>　　　　　　*Defendants*. | Civil Action No. 1:25-cv-00737-RC<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. This is a suit to compel Defendants United States Department of Agriculture (USDA); Brooke Rollins, in her official capacity as USDA Secretary; and Donald Trump, in his official capacity as President of the United States of America, to lift their unlawful and indefinite freeze of Congressionally mandated grant programs that support farmers, non-profit organizations, and other worthy recipients across the United States.

2. In 2022, Congress passed the Inflation Reduction Act (IRA), Pub. L. No. 117-169, 136 Stat. 1818. The Act appropriated funds for USDA programs in such critical areas as agricultural conservation, renewable energy projects for rural communities and farmers, forestry restoration, and wildfire mitigation measures. Inflation Reduction Act of 2022, H.R. 5376, 117th Cong. Title II.

3. Plaintiffs are farmers and non-profit organizations that received federal USDA grants under these programs and that acted in reliance on these grants by hiring employees, entering into contracts with local small business, promising new or expanded programs to community members, expending their own resources to invest in the projects' long-term success, and forgoing other funding opportunities that they reasonably believed they would no longer need.

4. On his first day in office, President Trump signed an Executive Order titled *Unleashing American Energy* that directed agencies, including USDA, to "immediately pause the disbursement of funds appropriated" through the IRA and to review their grants for consistency with the President's policy preferences. Exec. Order 14154, 90 Fed. Reg. 8353, 8357 (Jan. 29, 2025).

5.  USDA promptly complied with this Executive Order by cutting off IRA grant recipients' access to payment portals, refusing to process invoices, canceling check-in meetings upon which grant recipients depended for project guidance, and refusing to provide information about the status of grants. Although a district court in Rhode Island recently issued a preliminary injunction against the freeze, Defendants have shown no indication that they plan to end it absent judicial intervention. *Woonasquatucket River Watershed Council v. USDA*, No. 1:25-97, 2025 WL 1116157 (D.R.I. Apr. 15, 2025), *appeal docketed*, No. 25-1428 (1st Cir. May 1, 2025).

6.  The indefinite and indiscriminate funding freeze violates the United States Constitution's separation of powers and Take Care Clause by exceeding executive authority, usurping legislative authority, and abrogating the duty to take care that the laws be faithfully executed. It also violates the Administrative Procedure Act (APA) because it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" and "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A) and (C).

7.  Defendants have caused and continue to cause direct and immediate harm to Plaintiffs and many farmers and non-profit organizations whose livelihoods, jobs, and communities are now at risk. Some Plaintiffs have already laid off employees. All are faced with the prospect of layoffs or furloughs, abandoning projects in which they have invested significant time and money, reputational harm in the community for failing to deliver promised programs and, in some cases, shuttering their organization should the freeze continue.

8.  Plaintiffs seek declaratory and injunctive relief ending the unlawful funding freeze initiated by the *Unleashing American Energy* Executive Order and the actions USDA has taken to halt disbursement of obligated funds.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law, specifically, the United States Constitution and the APA, and pursuant to 28 U.S.C. § 1361.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1) because Defendants are officers and agencies of the United States, and at least one Defendant resides in Washington, DC.

**PARTIES**

**Plaintiffs**

11. Plaintiff Cultivate KC is a non-profit organization operating in Kansas and Missouri that supports farmers and advocates for an equitable, sustainable, and healthy local food system. The organization's work includes managing urban farms and a farmer training program in the Kansas City metro area, running a mobile grocery program to combat low food access, and assisting local farmers through consultations, grants, and practical support.

12. Plaintiff Faith in Place is a non-profit organization that works across Illinois, Indiana, and Wisconsin to empower people of diverse faiths and spiritualities to be leaders in advancing environmental projects and advocacy in their communities.

13. Plaintiff Foodshed Alliance is a non-profit organization in New Jersey that works to strengthen sustainable farming, increase access to local, healthy food, and protect the environment.

14. Plaintiff GreenLatinos is a national non-profit organization addressing national and local environmental issues in the Latino community. The organization works with communities across the country, including in New Mexico, Illinois, Texas, California, and

Colorado, to advocate for clean air and water, protection of public lands, and sustainable communities, and to promote urban and community forestry.

15. Plaintiff Hendrix Farm is a woman- and Black-owned farm in Mississippi. The farm prioritizes having a diversified business, growing fruit trees and seasonal vegetables, raising chickens for fresh eggs, and beekeeping for honey production.

16. Plaintiff HOPE for Small Farm Sustainability is a non-profit organization that works across North and Central Texas to close local food-systems gaps by providing training and education to small-scale farmers and individuals interested in growing, preparing, and selling their own organic food.

17. Plaintiff Red Fire Farm is a USDA Certified Organic farm in Massachusetts. It aims to be a year-round local source for high-quality food and garden plants.

18. Plaintiff Two Boots Farm is a family-run farm and floral design studio in Maryland. It grows a variety of flowers and specialty produce using sustainable, ecological practices.

## Defendants

19. Defendant USDA is a cabinet agency within the executive branch of the United States government. 7 U.S.C. § 2201.

20. Defendant Brooke Rollins is the Secretary of USDA and the Department's highest ranking official. *Id.* § 2202. She is sued in her official capacity.

21. Defendant Donald Trump is the President of the United States. He is sued in his official capacity.

**BACKGROUND**

22. In 2022, Congress passed and the President signed the IRA, which appropriated funds for existing and new public-health, environmental, climate-related, and agricultural programs over the course of a decade.

23. Relevant here, the IRA appropriated funds to USDA for several grant programs in which Plaintiffs participate. Specifically, the IRA appropriated $1 billion for the Natural Resources Conservation Service's Conservation Technical Assistance Program, which provides farmers and others with one-on-one advice, conservation technologies, and delivery systems for a healthy landscape (H.R. 5376 § 21002); $1.7 billion for the Rural Energy for America Program (REAP), including over $300 million for loans and grants to farmers to install renewable energy systems or make energy efficiency improvements to their farms (*id.* § 22002); money for assistance and support for underserved farmers and others, including $125 million for programs to provide training, support, and technical assistance and $250 million for land-loss assistance to increase farmers' access to land, capital, and markets (*id.* § 22007); and $1.5 billion for the Forest Service's Urban and Community Forestry Program, which assists States, Tribes, and partner organizations in improving the health and coverage of forests in urban communities nationwide (*id.* § 23003).

24. Following passage of the IRA, USDA issued notices of funding opportunities, reviewed applications, and awarded grants under these programs, including to Plaintiffs.

   a. Plaintiff Cultivate KC was awarded two grants that are subject to the funding freeze: (1) an Increasing Land Access (ILA) grant to provide bridge funding to farmers, to purchase land to create an incubator farm for new farmers, and to create a city-level position focused on food systems challenges; and (2) a

Conservation Technical Assistance grant to run technical workshops and create educational materials for Missouri's underserved farmers.

b. Plaintiff Faith in Place was awarded an Urban and Community Forestry Grant to help faith partners and community-based groups in the Midwest increase tree canopies in their communities and provide workforce training opportunities caring for those trees.

c. Plaintiff Foodshed Alliance received an Increasing Land Access grant to support programs to increase the number of underserved farmers in New Jersey by providing them affordable access to farmland, ensuring they have a robust way to sell their goods through a food hub, and providing technical assistance to help them access USDA programs that would support their success.

d. Plaintiff GreenLatinos was awarded an Urban and Community Forestry grant for projects on urban forestry planning, tree planting and maintenance, and urban forestry workforce development in communities across the country. The award funds projects for 18 municipalities and 15 community-based organizations.

e. Plaintiff HOPE for Small Farm Sustainability was awarded an Increasing Land Access grant to expand their training and education to small-scall farmers interested in growing, preparing, and selling organic food sustainably. The grant would allow them to hire staff and purchase equipment and land for the farmers in their programs to use.

f. Plaintiffs Hendrix Farm, Red Fire Farm, and Two Boots Farm (the Farmer Plaintiffs) were awarded REAP grants to pay a portion of the cost of solar energy or energy efficiency projects for their farms.

25. In reliance on the government's ongoing support pursuant to the IRA, grant recipients, including Plaintiffs, began implementing the projects they had proposed. Some hired staff, awarded subgrants, began construction on projects, and started working with communities and partners to develop and implement projects. Three Plaintiffs promised new farmers that land they planned to purchase or develop with federal grant money would be available for them to grow food and develop farming expertise. Other Plaintiffs guaranteed funding to subawardees and told them to begin work on their projects. All Plaintiffs incurred substantial expenses in reasonable expectation of continuing government support. Prior to January 20, 2025, reimbursement and advance requests were regularly processed and paid, generally within a week of submittal.

26. On his first day in office, January 20, 2025, President Trump signed the *Unleashing American Energy* Executive Order. 90 Fed. Reg. 8353. Section 2 of that Executive Order outlined a series of broad "polic[ies] of the United States" such as encouraging energy exploration and production on federal land and waters, establishing a position as a leading producer and processor of non-fuel minerals, ensuring an abundant energy supply, and, most relevant to this action, "ensur[ing] that no Federal funding be employed in a manner contrary to the principles outlined in this section, unless required by law." *Id*. at 8353-54.

27. Section 7 of the Order directed agencies to "immediately pause the disbursement of funds appropriated" through the IRA and to "review their processes, policies, and programs for issuing grants, loans, contracts, or any other financial disbursements of such appropriated funds for consistency" with the Executive Order. *Id.* at 8357.

28. Over the following week, the Office of Management and Budget (OMB) directed agency heads to halt disbursement of "appropriations for objectives that contravene the policies

8

established in section 2" of the Executive Order. OMB, Memorandum, M-25-11, *Guidance Regarding Section 7 of the Executive Order* Unleashing American Energy (Jan. 21, 2025). It also ordered agency heads to "pause all activities related to obligation or disbursement of all Federal financial assistance" that "may be implicated by" the Executive Order. OMB, M-25-13, *Temporary Pause of Agency Grant, Loan, & Other Financial Assistance Programs* 2 (Jan. 27, 2025).

29. Amidst these directives to pause the disbursement of all IRA funds, USDA cut off Plaintiffs' access to obligated funds, explicitly linking its actions to the directive in the Executive Order. When Plaintiff Faith in Place submitted its interim grant progress report on January 31, rather than receiving an acknowledgement of its submittal, it received a form email response asking it to "[p]lease be patient until we receive more clarity and direction" about how to implement the Order.[1] On February 11, Plaintiff Red Fire Farm received an email from USDA stating: "On January 20, 2025, President Trump signed an Executive Order that placed a freeze on spending authorized by the [IRA] …. USDA leaders have been directed to assess whether grants, loans, contracts, and other disbursements align with the new administration's policies."[2]

30. In response to a March Senate office inquiry on behalf of farmers, including some farmer Plaintiffs, USDA said that "[d]isbursements for previously obligated REAP IRA grants are paused until the Agency verifies that awarded projects align with the law and the policy outlined in section 2 of [the *Unleashing American Energy*] Executive Order…. There are

---

[1] A copy of this document is attached to this Complaint as Exhibit 1.
[2] A copy of this document is attached to this Complaint as Exhibit 2.

approximately 6,000 REAP IRA grant awards from FYs 2023-2025 that are paused and being reviewed for compliance with [the] Executive Order."[3]

31. Some Plaintiffs had check-in meetings with their USDA representatives cancelled, and one Plaintiff was told that their USDA grant officer did not have permission to speak with grantees.

32. Following entry of a preliminary injunction in a case to which Plaintiffs are not party, USDA has resumed processing invoices and advance requests for IRA grant recipients, including Plaintiffs. *Woonasquatucket River Watershed Council*, 2025 WL 1116157, *appeal docketed*, No. 25-1428.

33. Absent the guarantee of permanent judicial relief, however, the fate of Plaintiffs' projects remains uncertain, as the government has given no indication that it intends to lift the freeze unless compelled to do so by judicial decree. Plaintiffs accordingly lack the security they need to make investments in their ongoing projects with the knowledge that they will continue to receive the government's support irrespective of whether the preliminary injunction in *Woonasquatucket* remains in place.

## PLAINTIFFS' INJURIES

34. All Plaintiffs are concretely injured by the freeze of governmental support for their IRA projects and will continue to be harmed if this Court does not set aside Defendants' unlawful decision to suspend IRA grant programming.

35. Plaintiffs Cultivate KC, Faith in Place, Foodshed Alliance, GreenLatinos, and HOPE for Small Farm Sustainability are facing or have already had to implement furloughs, staff

---

[3] A copy of this document is attached to this Complaint as Exhibit 3.

layoffs, or program cuts, and some have been unable to fund subawards as a result of the unlawful freeze of IRA grant programming, to the detriment of their business and community reputation. Some have also seen subawardees leave their program because of the uncertainty about whether they will continue to be paid. USDA's freeze of all obligated support for Plaintiffs' projects, now and indefinitely into the future, has put these projects at risk.

36. As a result of the freeze, Plaintiff Cultivate KC paused implementation of multiple programs, including a microgrants program for farmers and a land purchase to expand the organization's operations. It eliminated a staff position for work on the new land purchase, reallocated other staff members' work, and paused programming plans, including purchasing land to give new farmers access to acreage to begin growing food. If the funding freeze is not permanently ordered to cease, the organization anticipates having to stop hiring for unfilled positions and work to fill a funding hole of nearly $100,000.

37. Plaintiff Faith in Place has laid off employees as a result of the freeze of its Urban and Community Forestry grant. Additionally, after it announced $1.3 million in awards to subawardees, it had to notify subawardees that it could not pay out their awards while the freeze remains in place. Projects, including tree planting, have been disrupted; staff have wasted time on designing and implementing programs that can no longer move forward; and subawardees have spent money in reliance on Faith in Place's ability to pay their awards from federal funds that are no longer guaranteed. Given the uncertain status of the funding freeze, the organization cannot guarantee the full scope of promised funding to its subawardees. Faith in Place does not know whether its subawardees will be able to keep the trees they plant through this project alive if it is unable to provide the full funding anticipated. Scaled back projects with less certainty of success will diminish their community benefits.

11

38. Plaintiff Foodshed Alliance had to pause program work and lay off staff as a result of the funding freeze. Specifically, it laid off a new staff person it had hired to manage its ILA-funded program work. It reduced four other staff members' hours, and paused work with all contractors. These changes have hurt morale at the organization and caused stress for both leadership and remaining staff. After receiving the ILA grant, Foodshed Alliance planned to install an irrigation system to make land suitable for farming, to build a market stand for farmers to sell from, and to construct a wash and pack for farmers' use. All this construction was paused due to the freeze, and farmers will be unable to use this land to grow food this season unless the freeze is permanently enjoined. One farmer decided to stop using Foodshed Alliance's land because of the lack of irrigation. Foodshed Alliance had to tell its subawardee to stop work during the freeze, and may have to do so again if the freeze is not permanently enjoined. The freeze has damaged the organization's credibility in the local business and farming community and left it in such a fragile financial position that it may not survive. Absent a permanent injunction, these farmer-serving projects and Foodshed Alliance's future remain at risk.

39. Plaintiff GreenLatinos, an Urban and Community Forestry grant recipient, experienced months-long delays in reimbursement of its invoices because of the freeze and made staffing and programmatic changes due to the uncertainty of future reimbursement. It rapidly shifted its staffing model to preserve valued staff members' positions without reliance on its Urban and Community Forestry grant. It paused the contracting process with several grant subawardees, paused trainings for already contracted subawardees, and delayed the primary goal of the program: planting trees in the ground. The harm from freezing GreenLatinos's funds further rippled out: subawardees were unable to proceed with their tree planting programs, and some are concerned they will have to fire staff if the freeze on IRA projects is not permanently

enjoined. GreenLatinos has awarded eighteen municipalities $11.5 million in subawards and fifteen community-based organizations $8.5 million. In total, its funding affects over 110 project partners, 155 jobs, and over 115 contractors. USDA's continued refusal to comply with the IRA's directives puts all of that at risk.

40. As a small organization, Plaintiff HOPE for Small Farm Sustainability planned for the ILA grant to fund most of its operations for the 5-year project period. After being awarded the grant, HOPE for Small Farm Sustainability decided not to pursue other grant opportunities and to instead invest deeply in implementing the ILA project. Now, the funding freeze has left the organization scrambling to find other sources of money to support its work. The freeze caused months-long delays in payments to HOPE for Small Farm Sustainability. If the freeze remains in effect, HOPE for Small Farm Sustainability is concerned it will not have enough money to pay its staff after December 2025, unless it quickly receives other grant money. The organization has already cut one staff member's hours in half; it proposed cutting another employee's hours in half as well but lost that employee because they could not afford to continue working there at the reduced hours. The funding freeze has also harmed program work. HOPE for Small Farm Sustainability spent nearly a year identifying two plots of land to purchase with ILA funding to expand the land available for new farmers to grow food and develop farming expertise. Just as they were about to close on the land purchases, USDA froze their ILA funding. HOPE for Small Farm Sustainability had to back out of both contracts, losing nearly a year of work and thousands of dollars invested in land appraisals and soil tests on the properties. If the freeze is not permanently enjoined, HOPE for Small Farm Sustainability will lack the support necessary to close on other property that is essential for the organization to carry out its ILA

program. The organization's future is also at stake. Without assurance that this grant will continue, the organization may not last after this year.

41. Plaintiffs Hendrix Farm, Red Fire Farm, and Two Boots Farm (the Farmer Plaintiffs) were awarded REAP grants to pay a portion of the cost of solar energy or energy efficiency projects for their farms.

42. After award of their grants, the Farmer Plaintiffs entered into contracts with installers, purchased supplies, expended significant funds of their own and, in some cases, took on loans to pay their portion of the projects. Uncertainty about whether USDA will fulfill its reimbursement obligation once their projects are completed is putting the projects, and these farms' futures, at risk. Plaintiffs would not have taken on these projects nor begun investing their own resources in them without the financial support of the USDA program.

43. In addition to financial harms, some of the Farmer Plaintiffs may lose the long-term benefits of their solar and energy efficiency projects if Defendants' unlawful freeze forces them to abandon those projects midway. If fully completed, these projects will reduce their operating costs, which will improve the slim margins under which they operate. Some Plaintiff Farmers will be unable to move forward with the projects and will lose these benefits if USDA continues to freeze IRA projects.

44. For all of these reasons, the freeze of IRA funds and withholding of USDA support from grant recipients has directly harmed Plaintiffs and will continue to do so if it is not permanently enjoined.

## CLAIMS FOR RELIEF

### Claim One – Separation of Powers

### Nonstatutory Review and *Ultra Vires* Action

**(Against All Defendants)**

45. Plaintiffs incorporate by reference all allegations contained in the proceeding paragraphs.

46. Plaintiffs have a non-statutory right of action to have official action that is *ultra vires* declared unlawful. Federal courts have the power in equity to grant injunctive relief against federal officials who act in excess of the authority granted them by statute. *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949).

47. The Constitution vests spending powers exclusively in the hands of Congress. *See* U.S. Const. art. I, §§ 1, 8, 9. The President of the United States has only those powers conferred on him by Article II of the Constitution and federal statutes.

48. The Constitution grants Congress exclusive power to legislate.

49. The Executive has no authority under the Constitution to unilaterally amend federal statutes.

50. By directing "all agencies" to "immediately pause the disbursement of funds appropriated through the [IRA]" and providing that "[n]o funds … shall be disbursed by a given agency," the *Unleashing American Energy* Executive Order exceeds presidential authority and usurps legislative authority conferred by the Constitution on Congress, in violation of the separation of powers. 90 Fed. Reg. at 8357. "[W]henever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge." *Collins v. Yellen*, 594 U.S. 220, 245 (2021).

51. By withholding federal funding based on factors that are impermissible and arbitrary under the governing statutes, Agency Defendants are unlawfully acting outside the scope of their authority.

52. Plaintiffs are suffering and will continue to suffer irreparable injury if these actions are not declared unlawful, and Plaintiffs have no adequate remedy at law.

53. The public interest favors a declaration that the freeze of obligated IRA funds is unlawful.

## Claim Two – Violation of Take Care Clause

### (Against All Defendants)

54. The President and the Executive Branch have a duty under the Constitution to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

55. The Executive violates the Take Care Clause when it directs federal officers or agencies to act in derogation of a federal statute. It also violates the Take Care Clause when it declines to execute or undermines statutes enacted by Congress and signed into law.

56. The Take Care Clause is judicially enforceable against executive action that undermines or refuses to implement statutes enacted by Congress and signed into law. *See, e.g.*, *Angelus Milling Co. v. Comm'r of Internal Revenue*, 325 U.S. 293, 296 (1945).

57. By refusing to implement laws enacted by Congress, namely the IRA, Defendants act contrary to the Executive's duty to take care that the laws be faithfully executed.

58. Plaintiffs will suffer irreparable injury if the Executive Order is not declared unlawful, and Plaintiffs have no adequate remedy at law.

59. Plaintiffs are also entitled to an injunction preventing USDA from refusing to implement the IRA in an effort to comply with the *Unleashing American Energy* Executive Order.

**Claim Three – Violation of Administrative Procedure Act**

**Contrary to Law and in Excess of Statutory Authority**

**(Against Agency Defendants)**

60.     Agency Defendants are "agencies" under the Administrative Procedure Act. 5 U.S.C. § 551(1).

61.     The APA requires a court to "hold unlawful and set aside agency action … not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

62.     No constitutional or statutory authority authorizes federal agencies to refrain from fulfilling their statutory duties or to violate federal law.

63.     Congress authorized and appropriated funds under the IRA that have been obligated through an established grant award process to Plaintiffs.

64.     Agency Defendants refused to disburse those funds, implementing a categorical freeze on obligated funds appropriated by the IRA, in violation of that Act.

65.     Agency Defendants' actions also constitute the unlawful impoundment of appropriated funds, withheld in violation of the Congressional Budget and Impoundment Control Act of 1974 (the Impoundment Control Act).

66.     Plaintiffs are entitled to have Agency Defendants' actions set aside under the APA because they are contrary to law.

### Claim Four – Violation of Administrative Procedure Act

### Arbitrary and Capricious

### (Against Agency Defendants)

67. A court must "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. § 706(2)(A).

68. Agency Defendants provided no reasoned basis for halting the continued implementation of IRA grant projects without considering the consequences of those actions. A directive from the President to align spending with his policy preferences and halt the expenditure of funds appropriated under the IRA does not provide a reasoned basis for an immediate, categorical, and indefinite freeze of all IRA projects and fails to consider reliance interests.

69. USDA also fails to provide a reasoned basis for contradicting Congress's intent and directive.

70. By failing to consider grantees' reliance interests on these awards and the impact that the freeze would have on the farmers, nonprofits, and communities who benefit from them, Agency Defendants failed to consider an important aspect of the problem before taking action.

71. For all of these reasons, Agency Defendants' refusal to disburse obligated funds is arbitrary and capricious, and Plaintiffs are entitled to have the Agency Defendants' actions set aside under the APA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

(1) Declare Section 7 of the *Unleashing American Energy* Executive Order and the agency actions to implement it unconstitutional and/or unlawful;

(2) Vacate Agency Defendants' actions implementing the freeze of Inflation Reduction Act programs;

(3) Permanently enjoin Agency Defendants from implementing and maintaining the IRA freeze, or giving effect to, or reinstating it under a different name, and from delaying future payments to Plaintiffs of funds to which they are entitled.

(4) Order Agency Defendants to release any currently frozen, obligated funds appropriated under the Inflation Reduction Act.

(5) Retain jurisdiction to ensure compliance with this Court's decree.

(6) Award Plaintiffs the costs of this action, including attorneys' fees.

(7) Grant such other relief as the Court deems just and proper.

DATED: May 19, 2025

Respectfully submitted,

*/s/ Hana V. Vizcarra*
Hana V. Vizcarra (D.C. Bar No. 1011750)
Carrie Apfel (D.C. Bar No. 974342)
Deena Tumeh (D.C. Bar No. 1741543)
Mary (Molly) Prothero (D.C. Bar No. 1779237)
EARTHJUSTICE
1001 G Street NW, Suite 1000
Washington, D.C. 20001
(202) 667-4500
hvizcarra@earthjustice.org
capfel@earthjustice.org
dtumeh@earthjustice.org
mprothero@earthjustice.org